

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DAMON LAMAR CAMPBELL,

    Petitioner,

vs.

E.K. MCDANIEL, et al.,

    Respondents.

3:06-cv-0484-BES-VPC

**ORDER**

    This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by Damon Campbell, a Nevada prisoner represented by counsel. The action comes before the Court with respect to its merits. The Court will deny the petition.

## I. Facts and Procedural Background

    Petitioner was charged in the Eighth Judicial District Court for Clark County by way of amended information with murder with the use of a deadly weapon (count I) and two counts of attempted murder with the use of a deadly weapon (counts II and III). Exhibit 6.[1] The state also filed a notice of intent to seek the death penalty. Exhibit 5. A jury trial was held between November 5, 2001 and November 13, 2001. Exhibits 48-49, 51-56. The jury convicted petitioner of first degree murder with the use of a deadly weapon and attempted first degree

---

[1] The exhibits cited in this order in the form "Exhibit ___," are those filed by petitioner in support of his amended habeas corpus petition and are located in the record at docket #21-23.

murder with the use of a deadly weapon. Exhibit 58. Petitioner was acquitted of count III. *Id.* The penalty phase was held between November 14, 2001, and November 16, 2001. Exhibits 59-61. The jury found the mitigating circumstances outweighed the aggravating circumstances and imposed a sentence of life without the possibility of parole for count I. Exhibits 61 and 62. The trial court sentenced petitioner to 192 months in prison with the possibility of parole in 43 months, with an equal and consecutive sentence for the use of a deadly weapon for count II, to run concurrently to count I. Exhibit 66. A judgment of conviction was entered on January 22, 2002. Exhibit 67. The judgment of conviction notes that count I includes a consecutive sentence of life without the possibility of parole for the use of a deadly weapon. *Id.*

Petitioner appealed, and the Nevada Supreme Court affirmed the convictions. Exhibits 68 and 72. On September 3, 2002, petitioner filed a petition for writ of habeas corpus with the state district court. Exhibit 75. The state court denied the petition, finding that the petitioner had made only bare allegations without any factual support. Exhibit 79. Petitioner then filed another habeas corpus petition with the state district court on July 23, 2004. Exhibit 80. Petitioner also filed a supplemental brief in support of his petition. Exhibit 81. The trial court held a hearing on the petition on January 5, 2005, and then denied the petition. Exhibits 83 and 84. Petitioner appealed, and the Nevada Supreme Court affirmed the lower court's denial of the petition. Exhibits 84 and 90. Remittitur issued on August 2, 2006. Exhibit 92.

Petitioner initiated the instant action on September 1, 2006 (docket #1). The Court appointed counsel, and counsel filed an amended petition for writ of habeas corpus (docket #20). Respondents moved to dismiss the amended petition, arguing grounds one through four are time-barred and do not relate back to the original petition (docket #30). This Court granted the motion to dismiss on June 9, 2009, and dismissed grounds one, two, three, and four (docket #34). Respondents have now answered petitioner's remaining claim (docket #36) and petitioner has filed a reply (docket #37).

**II. Federal Habeas Corpus Standards**

2

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000), and citing *Bell,* 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer,* 538 U.S. at 75 (quoting *Williams,* 529 U.S. at 413). The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id.*

3

(quoting *Williams*, 529 U.S. at 409). See also *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004). In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to a state court's last reasoned decision. See *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).

### III. Discussion

In petitioner's remaining ground for relief he alleges that he is imprisoned in violation of his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments because trial counsel were ineffective for failing to investigate and object to a tape that contained a number of inadmissible 911 phone calls that inculpated the defendant. Petitioner states that but for trial counsels' unprofessional errors, there is a reasonable likelihood that the outcome of the trial would have been different.

In order to prove ineffective assistance of counsel, petitioner must show (1) counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of professionally competent assistance and (2) the deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). Regarding the first prong – commonly known as the "effectiveness prong" – the *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. *Id.* Defense counsel's duties are not to be defined so exhaustively as to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.*

///

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (citation omitted).

Construing the Sixth Amendment to guarantee not effective counsel per se, but rather a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. *Id.* at 691-92. The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id.* at 691-94. The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Petitioner raised the instant ground for relief in his state habeas corpus petition, and the Nevada Supreme Court affirmed the lower court's rejection of this claim on appeal, stating:

> First, Campbell contends that the district court erred in denying his motion for evidentiary hearing. Campbell claims that his trial

5

counsel was ineffective for failing to investigate the 911 tape that was admitted in evidence during his trial. He argues that an evidentiary hearing is necessary to determine trial counsel's reasons for not investigating and objecting to the admission of the tape, and to discern what was actually recorded on the tape. We disagree.

"A post-conviction habeas petitioner is entitled to an evidentiary hearing 'only if he supports his claims with specific factual allegations that if true would entitle him to relief.'" [fn 2: *Means v. State*, 120 Nev. 1001, 1016, 103 P.3d 25, 35 (2004) (quoting *Thomas v. State*, 120 Nev. 37, 83 P.3d 818, 823 (2004)).] To state a claim of ineffective assistance of counsel sufficient to invalidate a judgment of conviction, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. [fn 3: See *Strickland v. Washington*, 466 U.S. 688 (1984); *Warden v. Lyons*, 100 Nev. 430, 683 P.2d 504 (1984).] A petitioner must further establish a reasonable probability that, in the absence of counsel's errors, the result of the proceedings would have been different. [fn 4: *Id.*] The court can dispose of a claim if the petitioner makes an insufficient showing on either prong. [fn 5: *Strickland*, 466 U.S. at 697.]

Here, even assuming that counsel was deficient for failing to review the 911 tape, Campbell failed to allege sufficient facts, which if true, would have demonstrated a reasonable probability that the trial result would have been different if counsel had more thoroughly investigated and objected to the admission of the tape. Further, an evidentiary hearing was not necessary to discern what was actually recorded on the tape because the tape was admitted into evidence, became part of the trial record, and therefore was available for post-conviction counsel's review. Thus, we conclude that the district court did not err in determining that an evidentiary hearing was unnecessary.

Second, Campbell contends that the district court erred in determining that the statements contained on the 911 tape did not trigger the Confrontation Clause. [fn 6: U.S. Const. amend. VI] Campbell further contends that the Supreme Court's holding in *Crawford v. Washington* [fn 7: 541 U.S. 36, 68 (holding that out-of-court statements by witnesses that are testimonial in nature are barred under the Confrontation Clause unless the witnesses are unavailable and the defendant had a prior opportunity to cross-examine the witnesses).] is retroactive and that it applies in this case. Even assuming without deciding that *Crawford* is retroactive, Campbell failed to include in the record of appeal the 911 tape which he claims gives rise to a Confrontation Clause violation. Without the tape we are unable to conclude that the district court erred. "It is the appellant's responsibility to provide the materials necessary for this court's review." [fn 8: *Jacobs v. State*, 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975); see also NRAP 30(b)(3).]

Exhibit 90.

6

1    Petitioner has not demonstrated that the Nevada Supreme Court's determination was
2 an objectively unreasonable application of federal law, as determined by United States
3 Supreme Court precedent. In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the United
4 States Supreme Court held that out-of-court statements that are "testimonial" are inadmissible
5 at trial pursuant to the Confrontation Clause unless the declarant is unavailable to testify and
6 the defendant had a prior opportunity to cross-examine the declarant. In addition, the United
7 States Supreme Court has reiterated "that, when the declarant appears for cross-examination
8 at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial
9 statements." *Id.* at 59.

10    Petitioner states that counsel failed to investigate and object to the playing and
11 admission of a tape which contained several 911 emergency calls from people who did not
12 testify at trial. Specifically, petitioner points to the 911 call of a man, possibly named Tui, who
13 states that a man shot someone from the restroom on the bottom floor. Petitioner contends
14 that one of the issues in the case was where the shooting occurred, from inside an apartment
15 or from outside of the apartment. This person did not testify at trial. After reviewing the 911
16 tape, it appears a man named Tui did state that one person shot someone from the restroom
17 on the bottom floor of the apartment building. Exhibit 24.

18    First, the Court will note that *Crawford* is not applicable in this case, as the United States
19 Supreme Court has held that *Crawford* will not be retroactively applied to cases on collateral
20 review. *Whorton v. Bockting*, 127 S. Ct 1173 (2007). Petitioner's judgment of conviction was
21 final prior to the issuance of *Crawford*. Therefore, in order to show that a violation of the
22 Confrontation Clause occurred, petitioner must demonstrate that the declarant of the out-of-
23 court statement will testify at trial or is unavailable, and if unavailable, that the statement is
24 adequately reliable or trustworthy. *Bockting v. Bayer*, 505 F.3d 973, 978 (9th Cir. 2007)(citing
25 *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980)).[2]  Furthermore, under *Roberts* a hearsay

---

[2] While *Roberts* was overruled by *Crawford*, as this Court noted *Crawford* is not retroactive, therefore *Roberts*' holding applies in this case.

1 statement does not violate the Confrontation Clause if the hearsay statement falls within a firmly rooted hearsay exception. 448 U.S. at 66.

The declarant of the statement on the 911 tape was not available at trial, and thus his statement had to be adequately reliable or trustworthy in order to be properly admitted at trial, or had to fall within a firmly rooted hearsay exception. The 911 calls can be considered spontaneous statements or excited utterances. *See Winzer v. Hall*, 494 F.3d 1192 (9th Cir. 2007). A spontaneous statement is reliable if it is offered "without the opportunity to reflect on the consequences of one's exclamation." *White v. Illinois*, 502 U.S. 346, 356 (1992). Spontaneous statements or excited utterances are made in contexts that provide substantial guarantees of their trustworthiness and are "firmly rooted" hearsay exceptions that "carry sufficient indicia of reliability to satisfy the reliability requirement posed by the Confrontation Clause." *Id.* at 355, n.8 (citing *Idaho v. Wright*, 497 U.S. 805, 817 (1990)). The Court finds that statements made on the 911 tape fall within the excited utterance or spontaneous statement exception to hearsay, as each call was made while the shooting was occurring, or within minutes of when the crimes were committed. There is no indication that there was an opportunity for the 911 callers to pause or reflect, and therefore the possibility that the statement was fabricated is eliminated. *Wright* 502 U.S. at 355-56. The admission of the 911 tape did not violate the Confrontation Clause.

Even if *Crawford* were applicable in this case, this Court would not find a violation of the Confrontation Clause in this case. The United States Supreme Court held in *Davis v. Washington*, that statements to a 911 operator during an emergency are not testimonial and thus not subject to *Crawford*. 547 U.S. 813, 826-28 (2006). Statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822. In the instant case the 911 statements were not testimonial as they were made during an ongoing emergency–each person called 911 to report gunshots as they were happening. Petitioner has not shown that trial counsel was deficient for

8

1  failing to object to the admission of the 911 tape, or that counsel's failure prejudiced the
2  outcome of the proceeding.
3        Even if the introduction of the 911 tape was error, there is no indication that the tape had
4  a substantial and injurious effect on the jury verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638
5  (1993). Larry Morton, crime scene analyst for the Las Vegas Metropolitan Police Department,
6  testified that three cartridge casings were found on the ground almost against the apartment
7  building, under the bathroom window to the apartment. Exhibit 51, T 38. On cross-examination
8  Morton stated that when the shell casings hit the asphalt they could go in any direction, and
9  before the police arrived they could have been disturbed by people running around. *Id.* at T
10 81. James Krylo, firearm tool mark examiner, testified that he did not make any observations
11 about the ejection patters of the guns found at the scene of the crime. Exhibit 52, T 122.
12       Sheldon Hollimon was with the petitioner on the night the crimes were committed and
13 testified that several Mexican men began fighting with himself and petitioner, and he ran inside
14 the apartment. *Id.* at T 177. The petitioner then came inside the apartment and told Hollimon
15 that he thought he shot a couple of the men. *Id.* at T 177-78. Hollimon then heard more gun
16 shots that sounded as if they were coming from inside the apartment. *Id.* at T 178-79. On
17 cross-examination Hollimon stated that he was not sure if the later gun shots were fired from
18 inside the apartment. *Id.* at T 218. Noe Villanueva testified that he saw the petitioner "stick his
19 hand out the window" and shoot at several people. Exhibit 54, T 43. When further questioned
20 the witness stated he just saw a hand come out of the window in the apartment where the
21 petitioner lived, with a gun. *Id.* Villanueva also made the same statement regarding the hand
22 coming outside the window and shooting to the police. *Id.* at T 45-46. Finally, Wilfredo
23 Menendez testified that he also saw a person stick a gun out of the petitioner's bathroom
24 window and shoot. *Id.* at T 70-72.
25 ///
26

It appears that the jury could have concluded that the second round of gunshots were fired from inside the petitioner's apartment, even without hearing the 911 transcripts, as several witnesses indicated that gunshots came from the bathroom window. It is unlikely that if the admission of the 911 tape was erroneous that it had a substantial and injurious effect on the jury.

Petitioner has not demonstrated that trial counsel was ineffective, or that any such deficiency on the part of counsel prejudiced the outcome of the trial. The Court will deny ground five.

## IV. Certificate of Appealability

In order to proceed with an appeal from this court, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.* The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that none

1 | meet that standard. Accordingly, the Court will deny petitioner a certificate of appealability.

2 | **IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (docket #20) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY**.

Dated this 9th ay of September, 2009.

_____
UNITED STATES DISTRICT JUDGE

11